**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **DANNY WARE, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **CASE NO. 3:04-0528** |
| ) | **JUDGE KNOWLES** |
| ) | |
| **TOW PRO CUSTOM TOWING AND** ) | |
| **HAULING, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

## 1.  Introduction and Background

This matter is before the Court upon Defendant's Motion for Summary Judgment.

Docket No. 82.  Defendant has filed a supporting Memorandum (Docket No. 83), an Amended

Memorandum (Docket No. 85),[1] and a Statement of Undisputed Material Facts (Docket No. 84).

With its Statement of Undisputed Material Facts, Defendant has also submitted the Affidavit of

Doug Williams, with Exhibits, excerpts from the deposition of Plaintiff Lauren Bovill-Ware

Olson, and Interrogatory Responses executed by Plaintiff Danny Ware.

Plaintiffs have filed a Memorandum in Opposition to the Motion (Docket No. 90), a

Response to Defendant's Statement of Undisputed Material Facts (Docket No. 89), and a

Statement of Additional Undisputed Facts (Docket No. 91).  Defendant has filed a Response to

Plaintiffs' Statement of Additional Undisputed Material Facts (Docket No. 97), and, with leave

---

[1]  It appears that the only difference between the original Memorandum and the Amended
Memorandum is that the Amended Memorandum omits Footnote 3 of the original Memorandum.

of court (Docket No. 98, 101), Defendant has filed a Reply to Plaintiff's Opposition (Docket No. 140).

The parties previously consented to have this case tried before a United States Magistrate Judge (Docket No. 13), and Judge Campbell transferred it to the undersigned for final disposition (Docket No. 14).

The basic facts underlying this diversity action are essentially simple. Plaintiffs were the owners of a 1996 Kenworth T-600 truck, that was to be used by Plaintiff Danny Ware in his interstate trucking business. In October 2000, Mr. Ware and the truck were at the TA Truckstop in Nashville. A mechanic discovered certain commercial motor vehicle safety violations in the truck. Apparently unable to drive the truck following that inspection, Mr. Ware left it in the parking lot of the truckstop, pursuant to an oral agreement with an unnamed "Service Department Manager."

The truck remained in the parking at the TA Truckstop in Nashville approximately 22 months, until July 2002, at which time someone associated with the TA Truckstop telephoned Defendant, a Nashville tow truck company, and requested that the truck be removed from the premises. Defendant removed the truck and took it to its storage lot.

When Mr. Ware discovered that Defendant had possession of the truck, he and his attorney sought the return of the truck. Mr. Ware (and/or his counsel) were unable to reach an agreement with Defendant (and/or its counsel) by which the truck could be returned to Mr. Ware. On November 14, 2002, Defendant sold the truck at auction, after placing two ads, in a local Nashville newspaper, announcing the sale. Defendant did not, however, specifically notify Mr. Ware or his attorney in advance of the sale.

2

Thereafter, Plaintiffs filed the instant lawsuit. Plaintiffs' Amended Complaint raises 6 counts: negligence per se in violation of T.C.A. § 39-14-112, conversion, replevin, trover, unfair and deceptive trade practices in violation of T.C.A. § 47-18-104 (the Tennessee Consumer Protection Act, hereinafter "TCPA"), and intentional spoliation of evidence. Plaintiffs also sought an award of punitive damages.

Plaintiffs subsequently stipulated to a dismissal of their claim for replevin (Docket No. 141), and their claim for intentional spoliation of evidence has previously been dismissed.[2] Docket No. 118.

Defendant filed an Answer to the Amended Complaint, essentially denying that Plaintiffs are entitled to relief. Docket No. 130. Defendant subsequently filed a "Counter-Complaint" seeking the recovery of its towing and storage charges, less the amount the truck brought at the foreclosure sale. Docket No. 20.

## II. Facts

Unless otherwise indicated, the following facts are undisputed and are set forth in "Plaintiffs' Response to Defendant's Statement of Material Facts as to which the Defendant Contends There is no Genuine Issue for Trial" (Docket No. 89) and/or in "Defendant's Response to Non-movants' (Plaintiffs') Statement of Additional Material Facts Offered in Opposition to Defendant's Motion for Summary Judgment" (Docket No. 97).[3]

---

[2] Defendant previously sought a judgment on the pleadings with regard to Count VI of the Amended Complaint, arguing that Tennessee courts do not recognize a cause of action for the tort of third-party intentional spoliation of evidence. Docket No. 58. Plaintiffs did not oppose that Motion, and the Court granted it. Docket No. 118.

[3] Local Rule 56.01(b) requires a party filing a Motion for Summary Judgment to also submit "a separate, concise statement of the material facts as to which the moving party contends

3

In June 2000, Plaintiffs purchased a 1996 Kenworth T-600 truck from a Charlotte, North Carolina, truck dealer for $47,915.00. The truck was to be used by Plaintiff Danny Ware in his interstate trucking business.

In October 2000, Mr. Ware arranged for the inspection of the vehicle at the TA Truckstop in Nashville. The mechanic performing that inspection discovered certain commercial motor vehicle safety violations evident in the Kenworth truck.[4] Following that truck inspection, Mr. Ware left the Kenworth truck in the parking lot of the Truckstop based upon an oral agreement with an unnamed "Service Department Manager."

Eight months later, on April 10, 2001, Plaintiffs initiated a breach of warranty action against the vendor of the truck in state court in Charlotte, North Carolina, based on the vehicle defects discovered at the TA Truckstop in October 2000. While the North Carolina litigation was pending, Plaintiffs' truck continued to sit unattended at the TA Truckstop in Nashville.

On July 10, 2002, a security officer at the TA Truckstop telephoned Defendant, a Nashville tow truck company, and requested that the Kenworth truck be removed from the premises. When he went to pick up the truck, the Tow Pro tow truck driver received a written

_____

there is no genuine issue for trial." The Rule provides, "Each fact shall be supported by specific citation to the record." Local Rule 56.01(c) requires a party opposing the Motion for Summary Judgment to respond to each fact set forth by the movant by either agreeing that the fact is undisputed, agreeing that the fact is undisputed for purpose of the ruling on the Motion for Summary Judgment, or demonstrating that the fact is disputed. A party, however, may not merely deny a fact without citation; "[e]ach disputed fact must be supported by specific citation to the record." *Id.*

[4] Defendant contends that the inspection was performed by a "mechanic." Plaintiffs deny that assertion, stating, "The inspection was by a Department of Transportation authorized mechanic." To the extent that there is a factual dispute concerning this point, it is not material for purposes of summary judgment.

4

authorization for the tow from a designated representative of the TA Truckstop. The Tow Pro

tow truck driver then towed the Kenworth vehicle to a storage lot on Lloyd Avenue in

Metropolitan Nashville.

When it was impounded, the truck had no license tag and contained no markings to

indicate the address or telephone number of the owner, nor was there any indicia of ownership

inside the vehicle.

Two days later, on July 12, 2002, Tow Pro sent a Form SF-0957 to the Tennessee

Department of Safety (DOS) requesting the name and address of the owners and/or lienholders

of the vehicle. Several weeks later, that request form was returned to Tow Pro by the DOS with

the notation: "Contact Georgia for current owner and lien information."

On August 13, 2002, after receiving the returned SF-0957 form, Tow Pro sent a written

request to the Georgia Department of Motor Vehicles (DMV), via certified mail, requesting

owner/lienholder information on the Kenworth truck. Tow Pro never received a response to the

request it made to the Georgia DMV.

On October 7, 2002, Tow Pro was contacted by telephone by Danny Ware. Although

there is some dispute as to how Mr. Ware discovered that Tow Pro had the truck, and some

dispute as to whether he went to the premises,[5] it is undisputed that someone at Tow Pro, whom

he believed to be Catt Surett, told Mr. Ware that he would have to pay money to get the truck

---

[5] Plaintiffs admitted that, on October 7, 2002, Plaintiff Danny Ware contacted Tow Pro "by telephone." Docket No. 89, ¶ 14. When Defendant sought Plaintiff's Response concerning the specifics of that telephone conversation, Plaintiffs stated, "Danny Ware did not telephone Tow Pro, but rather appeared in person at its premises." Docket No. 89, ¶ 16. To the extent that there is a factual dispute concerning this point, it is not material for purposes of summary judgment.

5

back. Mr. Ware was also advised that the truck was being held in lieu of a $125.00 towing fee and 89 days of storage fees (at $50/day), plus taxes, a total of $4,996.63.[6]

Plaintiffs then contacted the North Carolina attorney who was handling the lawsuit against the sellers of the truck in North Carolina. On October 8, 2002, at about 10:00 a.m., Tow Pro received a phone call from the Wares' attorney, who explained to Tow Pro that he was the Wares' attorney. The attorney was told that the Kenworth truck was being held in lieu of "$4,996.63 in outstanding charges, and that it was subject to be sold at a foreclosure sale within ten (10) days if the charges were not paid and the vehicle retrieved."

On October 9, 2002, the Wares' North Carolina attorney sent a letter to Tow Pro in which he acknowledged Tow Pro's claim for $4,996.63 in towing and storage fees. That letter states in pertinent part as follows:

> As I advised you yesterday via teleconference, we have been retained by Lauren and Danny Ware in regards to the 1996 Kenilworth [*sic*] T-600, V.I.N. 1XKADB9X2TR718271 (Hereinafter "Vehicle") currently in your possession. From our conversation yesterday, I understand that you intend to sell the vehicle via public auction in the event the Ware's [*sic*] do not pay to your company in ten (10) days the $4,996.63 in storage charges it claims is owed for the storage of the vehicle.

Docket No. 84-2, Ex. A-6.

On October 15, 2002, Plaintiff Lauren Ware received a certified mail notice sent by Tow Pro on October 8, 2002. Tow Pro was unable to locate a copy of the actual letter that was sent to

---

[6] While Plaintiffs disputed some of the facts set forth in Defendants' Statement of Undisputed Material Facts No. 16, Plaintiffs did not dispute these specific facts, stating "All Danny Ware can recall about any conversation was that Ms. Catt Surett demanded that he would have to pay money to get his truck back." Docket No. 89, p. 5-6. Since these facts are set forth in the Affidavit of Doug Williams, and since Plaintiffs have not denied these facts with an appropriate citation to the record, the Court accepts these facts as undisputed.

6

the Wares.  It is, however, undisputed that the notice was sent on a form that was routinely used in the normal course of business at Tow Pro to send such notices to the owners and lienholders of unclaimed impounded vehicles.  That form notice states in pertinent part as follows:

> THIS LETTER IS TO NOTIFY YOU OF LIEN AND CONSEQUENCES OF FAILURE TO REDEEM STORED VEHICLE NAMED BELOW, PURSUANT TO TCA 55-16-105.
> . . .
>
> The vehicle described above is being held subject to payment for towing, recovery and storage fees at Tow Pro, Inc., 2408 Lloyd Ave., Nashville, TN 37218.
>
> The vehicle came into our custody on _____ our invoice _____.  The state motor vehicle records show you as the registered owner(s) and/or lienholder(s).  The total charges accrued as of the date of this notice are _____.  Storage charges will continue to accrue at the rate of $_____ per day.  Pursuant to TCA 55-23-104, notice is hereby given that, if applicable, Tow Pro, Inc., intends to charge a storage fee for a period to exceed sixty (60) days.
>
> You have a right to redeem the above vehicle within ten (10) days of the date of this notice upon payment of all towing, preservation and storage charges resulting from placing the vehicle in custody.  Failure to exercise your right of redemption within the time provided shall be deemed a waiver of all your rights, title and interest in the vehicle and consent to the sale of the vehicle at public auction.
>
> Should the vehicle be sold at public auction, the owner and/or lienholder shall not be relieved of responsibility for any deficiency.  Tow Pro, Inc. reserves, and nothing herein shall be construed as a waiver of, the right to proceed against both the vehicle owner and/or lienholder for any deficiency between the total charges due, including any costs of the sale and the amount received from such sale.

Docket No. 84-2, Ex. A-4.

7

Plaintiffs never redeemed the truck, never made an agreement with Tow Pro for continued storage or for postponement of a foreclosure sale, and never obtained a court order for possession. As will be discussed below, however, Plaintiffs argue that they never received notice of the foreclosure sale.

Defendant caused to be published in the *Nashville Record* two notices of a sale of the truck, to be held on November 14, 2002. These notices, which were identical in language, were published October 31, 2002, and November 7, 2002. The notices state as follows:

> NOTICE OF SALE
>
> Tow Pro will sell the following vehicle at 9:00 a.m. on November 14, 2002.
>
> 1. 1996 Kenworth T-600 1XKAD89X2TR
> Insertion Dates: October 31 and November 7, 2002.
> Add No. 560

Docket No. 84-2, Ex. A-8. These advertisements do not set forth the specific address of the sale, nor do they set forth the owner of the truck.

Tow Pro never expressly notified the Wares or their North Carolina counsel that the vehicle was going to be sold at auction on the specific date of November 14, 2002. Prior to November 14, 2002, Tow Pro knew that the Wares resided in Georgia and that the Wares' attorney resided in North Carolina.

Prior to and on the date of the auction, Tow Pro was aware of the fact that certain issues regarding the truck were in dispute in a civil action pending in federal court in North Carolina. Prior to the auction, Tow Pro was advised by the Wares' attorney that Plaintiffs' possession of the truck was necessary for the Wares to resolve the North Carolina lawsuit. Prior to the auction,

8

a Nashville attorney representing Tow Pro engaged in discussions with "the Plaintiff" in an effort to resolve the dispute over the claim towing and storage charges.

On November 14, 2002, the truck was purchased at the referenced sale by Doug Williams, President and Manager of Tow Pro, who was the only buyer appearing at the sale. He purchased the truck for the sum of $200.00.

Prior to the auction sale of November 14, 2002, the Wares could have recovered possession of their truck at any time by paying the accrued towing and storage charges, but they never did.[7] Prior to the auction, the Wares offered to compensate Tow Pro in return for surrendering possession of the truck, but their offer was for a sum less than the total outstanding charges assessed by Tow Pro.

During the period of time in which the truck was in Tow Pro's possession, it was not being held for a tax, assessment or fine pursuant to law, nor had it been taken or required under an execution or attachment against the Wares' property.

Tow Pro never received consent from the Wares to charge a storage fee for a period exceeding sixty (60) days.

---

[7] This fact is set forth in the "Statement of Material Facts As To Which the Defendant Contends There Is No Genuine Issue for Trial" (Docket No. 84-1, No. 26) and it is supported by the Affidavit of Doug Williams (Docket No. 84-2, ¶ 20).

In "Plaintiffs' Response to Defendant's Statement of Material Facts As To Which the Defendant Contends There Is No Genuine Issue for Trial," Plaintiffs dispute this fact, citing "Exhibit 8, Affidavit of T. David Higgins, Jr." Mr. Higgins, however, withdrew his Affidavit after Defendant filed a Motion to Strike the Affidavit. Docket Nos. 94, 135. Thus, Plaintiffs have no support in the record for their denial of this fact, and the Court concludes that is an undisputed fact. The Court also notes that there is nothing in Mr. Higgins' Affidavit that would contradict this fact.

9

Tow Pro has never been charged with or convicted of the crime of extortion.

Finally, a discussion of another allegedly "undisputed" fact is necessary for an understanding of some of the Court's rulings with regard to Plaintiffs' claims for negligence per se/extortion and for violation of the TCPA. Plaintiffs averred in their Amended Complaint that, at some point, Defendant demanded that Plaintiffs pay to it $20,000 before it would return the truck to Plaintiffs. Docket No. 17, ¶ 18. This allegation forms part of the basis for Plaintiffs' claims that Defendant is guilty of negligence per se because it violated T.C.A. § 39-14-112, and that Defendant violated the TCPA.

The only support in the record for this allegation that is in a form required by Fed. R. Civ. P. 56(c) is Defendant's original Response to Plaintiffs' Request for Admission No. 13. That request, and the original Response, are as follows:

> REQUEST NO. 13: Please admit that, pursuant to your instructions or with your knowledge, Attorney Kevin Key, Esq., of Nashville, Tennessee, demanded payment of $20,000.00 from the Wares as a precondition to you surrendering possession of the truck.

> RESPONSE: Objection. The request is ambiguous and misleading. It is, however, admitted that after the reasonable towing and storage charges had accrued in excess of $20,000, Kevin Key, Esq., of Nashville, Tennessee, advised either the Wares or their counsel that the Defendant would accept $20,000 in payment of all accrued charges and release the vehicle.

Docket No. 89-3.

It appears that Plaintiffs propounded this Request for Admission on August 18, 2004, and that Defendant responded on September 15, 2004. Docket No. 120, p. 1. On August 31, 2005, however, Defendant prepared and served upon Plaintiffs a "Corrected Response to Plaintiffs' Request for Admissions." The Corrected Response to Request No. 13 was, "Denied."

10

Almost four months thereafter, as part of their Response to the pending Motion for Summary Judgment, Plaintiffs submitted their Statement of Undisputed Material Facts (Docket No. 91), which stated in part:

> 19.  In late 2003, Attorney Kevin Key, at Tow Pro's instructions, demanded payment of $20,000.00 from the Wares as a precondition to Tow Pro's surrendering possession of the Truck. (Defendant's Response to Request for Admission No. 13, Exhibit 2 [Docket No. 89-3]; Affidavit of T. David Higgins, Jr., Exhibit 8 [Docket No. 89-9]).

In response to this allegedly undisputed fact, Defendant stated as follows:

> RESPONSE: OBJECTION.  This proposed statement of fact is based, in part, upon an Affidavit subject to Defendant's pending Motion to Strike.  Further, Defendant's Response to Request for Admission No. 13, also relied upon, was later corrected by the Defendant.  (Exhibit 1, attached).  Absent Higgins' Affidavit and Defendant's *original* Response to Request for Admission No. 13, this proposed statement of fact cannot be supported by a specific citation to the record.  *See* Local Rule 8(b)(7)c.[8]

(Footnote added.)

The only support in the record for the allegation that Defendant demanded $20,000 before it would return the truck, which is in a form required by Fed. R. Civ. P. 56(c), is Defendant's original Response to Request for Admission No. 13.[9]  That Response, however, has now been amended, and Defendant denies this fact.

Plaintiffs have filed two Motions, both of which seek to strike Defendant's Corrected

---

[8]  Local Rule 8(b)(7)c is now Local Rule 56.01(b), which is discussed in Note 2, *supra*.

[9]  In support of this fact, Plaintiffs also cited the Affidavit of T. David Higgins, Jr.  As has been discussed above, however, Mr. Higgins withdrew his Affidavit.  *See* n.6, *supra*, and Docket No. 135.  The Court also notes that there is nothing in Mr. Higgins' Affidavit that would support this allegedly undisputed fact.

Response to Request for Admission No. 13 on grounds that Defendant cannot amend a Response to a Request for Admission without first filing a Motion. Docket Nos. 103, 120. The Court has denied both those Motions, essentially holding that Defendant's Corrected Response to Request for Admission No. 13 is appropriate. Docket Nos. 137, 142.

Thus, Defendant's original Response to Request for Admission No. 13 has been amended, and Defendant has denied that, in late 2003, it demanded payment of $20,000 from the Wares as a precondition to returning the truck to them. There is nothing in the record to support this alleged fact, and the Court cannot accept it as a fact in connection with the instant Motion.[10]

### III. Analysis

#### A. Summary Judgment Standards

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To prevail, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *See Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 202 (1986); *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the court must view the evidence in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986).

---

[10] As will be discussed below, Plaintiffs may not rest upon the mere allegations of their Amended Complaint to establish this fact, but they must come forward with Affidavits or other material in a form required by Fed. R. Civ. P. 56(c).

Fed. R. Civ. P. 56 provides that the non-moving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a non-moving party, however, fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23; *Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999).

**B. Plaintiffs' Claim for Negligence Per Se Based Upon a Violation of T.C.A. § 39-14-112.**

In Count I of their Amended Complaint, Plaintiffs claim that Defendant committed negligence per se by violating T.C.A. § 39-14-112. That statute provides as follows:

> **Extortion. –** (a) A person commits extortion who uses coercion upon another person with the intent to:
>
> (1) Obtain property, services, any advantage or immunity; or
> (2) Restrict unlawfully another's freedom of action.
>
> (b) It is an affirmative defense to prosecution for extortion that the person reasonably claimed:
>
> (1) Appropriate restitution or appropriate indemnification for harm done; or
> (2) Appropriate compensation for property or lawful services.
>
> (c) Extortion is a Class D felony.

Plaintiffs' claim in this regard is based entirely upon the allegation that Defendant

Case 3:04-cv-00528   Document 143   Filed 01/12/07   Page 13 of 28 PageID #: 874

demanded $20,000 from Plaintiffs before it would return the truck to them.  As discussed above, however, Defendant has disputed this fact, and Plaintiffs have come forward with no evidence to support this alleged fact.  Under *Celotex,* if a non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  477 U.S. at 322-23.  Therefore, Plaintiffs' claim for negligence per se based upon a violation of T.C.A. § 39-14-112 must fail.

Even assuming for purposes of argument that Plaintiffs had factual support for this proposition, Plaintiffs cannot show a violation of T.C.A. § 39-14-112, and, thus, cannot show negligence per se.

Defendant correctly argues that T.C.A. § 39-14-112 is a criminal statute.  Defendant further argues that, in order to successfully prosecute a negligence per se claim, a party must first establish that a defendant violated a statute or ordinance that imposes a duty or prohibition for the benefits of a person or the public.  *Bennett v. Putnam County,* 47 S.W.3d 438, 443 (Tenn. Ct. App. 2000).  Defendant argues that because it has never been adjudged guilty of the crime of extortion, it cannot be liable as alleged in Count I of Plaintiffs' Amended Complaint.

It is undisputed that Defendant has never been charged with or convicted of the crime of extortion.  Since Defendant is not guilty of the crime of extortion, Plaintiffs cannot establish the threshold element necessary to a claim of negligence per se, *i.e.*, that Defendant violated a statute or ordinance.

For the foregoing reasons, there is no genuine issue as to material fact, and Defendant is entitled to a judgment as a matter of law with regard to Count I of Plaintiffs' Complaint.

### C. Preemption

Defendant addresses Plaintiffs' claims of conversion and trover, and Plaintiffs' claims under the TCPA, and Defendant makes specific arguments that it is entitled to a judgment as a matter of law on those Counts. Defendant also, however, raises an argument that all Plaintiffs claims are preempted by federal law. Because the Court concludes that some of Plaintiffs' claims are preempted, the Court will first address the preemption issue.

On August 23, 1994, Congress, exercising its powers under the Commerce Clause, enacted 49 U.S.C. § 14501(c), which generally deregulated the intrastate motor freight industry. That statute states in pertinent part as follows:

> **Motor carriers of property.** (1) General rule. Except as provided in paragraphs (2) and (3),[11] a State, political subdivision of the state, or political authority to two or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property.

(Footnote added.)

Defendant argues that Plaintiffs' claims in this action constitute the enforcement of a state law related to a motor carrier's prices, routes, or services, and, therefore, that these claims are preempted by federal law.

Defendant cites *A.J.'s Wrecker Service of Dallas, Inc. v. Salazar*, 165 S.W.3d 444 (Texas

---

[11] Section 14501(c)(1) contains some exceptions to the "General rule." Plaintiffs have not, however, argued that any of the exceptions apply. Their sole argument is simply that their claims are not preempted by the statute. Thus, the Court has no reason to address any of the exceptions to the general rule.

Ct. App. 2005). *Salazar* involved a situation similar to that presented in the case at bar. In *Salazar*, Plaintiff's car was towed from an apartment parking lot by Defendant. Defendant notified her that it had possession of the car. After a period of approximately sixty (60) days, Plaintiff obtained her car back from Defendant, and filed suit alleging, *inter alia*, negligence per se, conversion, civil theft, and trespass to chattel. Defendant raised the defense of preemption under § 14501(c)(1).

The *Salazar* Court first noted that, under the Supremacy Clause (U.S. Const. art. VI, c1. 2), if a state law conflicts with a federal law, the state law is preempted and without effect. 165 S.W.3d at 446, *citing Maryland v. Louisiana*, 451 U.S. 725 (1981). The *Salazar* Court determined that Plaintiff's tort claims constituted the enactment or enforcement of a state law related to a motor carrier's prices, routes, or services. The *Salazar* Court noted that § 14501(c) is modeled after the preemption provision contained in the Airline Deregulation Act (49 U.S.C. § 41713(d)(1). The *Salazar* Court also noted authority for the proposition that state torts can constitute enforcement of a state law within the meaning of the ADA.

The *Salazar* Court also determined that Plaintiff's claims arose directly from Defendant's service of towing cars. The Court stated:

> [T]respass to chattel, conversion, and civil theft have elements
> closely related to AJ's non-consensual towing service. Towing
> cars without the owner's consent is one of the services AJ's
> provides. Moreover, the regulatory impact of these causes of
> action could be significant. If these claims are allowed to proceed,
> AJ's conceivably could be hauled into court to defend its actions
> every time it tows a car without the owner's consent. This
> constitutes regulation of motor carriers through enforcement of
> state laws. Allowing these causes of action to proceed against
> motor carriers has the potential to frustrate the purpose of the
> preemption statute – economic deregulation. We conclude
> Salazar's claims are preempted because they constitute

16

> enforcement of state law related to the towing service provided by
> AJ's.

165 S.W.3d at 449. Thus, the *Salazar* Court determined that plaintiff's claims were preempted by federal law, and dismissed the case.

Plaintiffs in the case at bar essentially respond that the Court should not be concerned with a single case from the Texas Court of Appeals. Plaintiffs argue that Defendant does not cite any Tennessee case or federal case standing for the proposition that such claims are preempted. Additionally, Plaintiffs argue that *Salazar* related solely to a non-consensual towing. Plaintiffs state, "Here, Plaintiffs' [*sic*] are based not upon the non-consensual towing, but the unauthorized *storage* charges, Tow Pro's violations of the Tennessee statutes regarding notice as to storage fees and sales, and Tow Pro's conduct in continuing to negotiate with Plaintiffs for release of the vehicle when it had long sold the vehicle."[12] Docket No. 90, p. 20 (italics and underlining in original). Plaintiffs argue that these matters do not relate to "price, route, or service."

The Sixth Circuit, however, has addressed the preemption issue in a case involving towing regulations. In *Petrey v. City of Toledo*, 246 F.3d 548 (6th Cir. 2001), *disapproved in part on other grounds in City of Columbus v. Ours Garage and Wrecker Service, Inc*., 536 U.S. 424 (2002), a towing company sued the City of Toledo, alleging that a series of its towing ordinances were preempted by 29 U.S.C. § 14501(c)(1). After discussing the Supremacy Clause, the *Petrey* Court stated in part as follows:

---

[12] In their Amended Complaint, Plaintiffs do not specifically allege, as a separate cause of action, that Defendant violated Tennessee statutes regarding notice as to storage fees and sales. Plaintiffs argument apparently is that Defendant, by allegedly violating these statutes, converted the truck by intentionally exercising dominion over it in defiance of Plaintiffs' rights. Docket No. 90, p. 16-18.

The general preemption provision of § 14501(c) was first passed in 1994 as part of the Federal Aviation Administration Authorization Act, which attempted, in part, to deregulate the motor carrier industry. . . . The general preemption rule, recodified in its current form under the Interstate Commerce Commission Termination Act ("ICCTA") of 1995, effective January 1, 1996, provides that "a State, political subdivision of a State, or political authority of 2 or more states may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." . . .

There are two relevant exceptions to § 501(c)(1)'s general preemption rule in this case. The first, passed in 1994 at the same time the general preemption provision was first enacted, allows the "State" to engage in various safety regulations without falling prey to the general preemption provision. . . . The second exception to the general rule, added later pursuant to the ICCTA, permits a "State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle." 49 U.S.C. §14501(c)(2)(C). *Because § 14501(c)(2)(C) specifically exempts from preemption a state or political subdivision's regulation of the price of non-consensual tows, it is clear that Congress, when referring to "motor carriers" in the general preemption provision, had tow trucks in mind.*

246 F.3d at 554 (citations and footnote omitted, emphasis added).

The *Petrey* Court further stated:

Section 14501(c)(1) prevents states or political subdivisions from "enacting or enforcing a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property[,]" and all of the circuits that have addressed this provision have held that it applies to state and local laws regulating towing services. . . . *Once it is acknowledged that [the municipal code provision at issue] relates to a price, route, or service of the towing industry, the plain language of § 14501(c)(1) preempts it, unless an exception to preemption applies.*

18

246 F.3d at 559 (citations omitted, emphasis added).

The Eleventh Circuit reached a similar conclusion in *R. Mayer of Atlanta, Inc. v. City of Atlanta,* 158 F.3d 538 (11th Cir. 1998), *disapproved in part on other grounds in City of Columbus v. Ours Garage and Wrecker Service, Inc*., 536 U.S. 424 (2002). In that case, several towing companies sued the City of Atlanta, alleging that several city ordinances regulating wrecker companies were preempted by § 14501(c). Plaintiffs had received citations for violations of the ordinances, all of which involved "consensual tows." The *Mayer* Court began its analysis "with the language employed by Congress and the assumption that the ordinary meaning of the language accurately expresses the legislative purpose." 158 F.3d at 543, *citing Morales v. Trans World Airlines,* 504 U.S. 374, 383 (1992). In addressing the language of the statute, the *Mayer* Court stated:

> A "motor carrier" is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102 (12). Motor vehicle transportation by a tow truck for the compensation of the tow truck company, which is at issue in this case, places the towing companies within the definition of a "motor carrier." Consequently, under the plain, ordinary meaning of the terms used in § 14501(c)(1), the federal statute expressly preempts state and municipal ordinances that regulate the prices, routes, or services provided by towing companies.
>
> This conclusion is strengthened by Congress' addition of a limited exception to § 14501(c)(1)'s preemptive scope for non-consensual towing services. Section 14501(c)(2)(C) states that § 14501(c)(1) does not apply to the authority of a state or a political subdivision to enact or enforce an ordinance relating to the price of towing services "if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle." § 14501(c)(2)(C). *If Congress had not intended for § 14501(c)(1) to preempt state and local regulation of towing services generally, Congress would not have included an express exemption that applies solely to the prices charged for non-consensual towing services.*

19

158 F.3d at 543 (emphasis added).

In *Harris County Wrecker Owners for Equal Opportunity v. City of Houston*, 943 F. Supp. 711 (S.D. Tex. 1996), the Court stated one of the issues as, "Are state and local intrastate tow truck regulations preempted by § 14501(c)?"  In answering this question in the affirmative, the Court stated:

> This court concludes that Congress removed any statutory
> uncertainty about its intent to preempt state and local towing
> regulations with a passage of the ICC Termination Act of 1995.
> That Act added a new subsection (c)(2)(C) specifically allowing
> state and local regulations relating to the price of non-consensual
> towing.  The addition of § 14501(c)(2)(C) confirms congressional
> intent in § 14501(c)(1) to preempt state and local regulations.  If
> Congress had not intended to preempt such regulations the
> addition of § 14501(c)(2)(C) to cancel this preemptive force would
> have been unnecessary.

943 F. Supp at 722.

As discussed above, Plaintiffs argue that their claims in this action are not based upon the towing, but "the unauthorized *storage* charges, Tow Pro's violations of the Tennessee statutes regarding notice as to storage fees and sales, and Tow Pro's conduct in continuing to negotiate with Plaintiffs for release of the vehicle when it had long sold the vehicle." (Italics and underlining in original).  The first two of these arguments are unpersuasive; the third, concerning the TCPA, will be addressed in section E below.

First, although it is somewhat unclear, Plaintiffs may be arguing that matters related to storage of vehicles are not preempted by § 14501(c)(1), because the storage of a vehicle that has been towed does not relate to "a price, route, or service of any motor carrier . . . with respect to the transportation of property."  Defendant made a similar argument in *Ace Auto Body & Towing Ltd. v. The City of New York*, 171 F.3d 765 (2nd Cir. 1999).  The *Ace* Court, however, noted that

20

Congress intended a broad statutory definition of "transportation" to apply to § 14501. The *Ace*

Court cited what is now 49 U.S.C. § 13102(21), which provides as follows:

> (21) Transportation. The term "transportation" includes –
> (A) A motor vehicle . . . or equipment . . . related to the movement
> of passengers or property, or both . . . ; and
> (B) Services related to that movement, including . . . *storage,*
> handling, packing, unpacking, and interchange of passengers and
> property.

(Emphasis added.)

The statutory definition of "transportation" specifically includes "storage." Thus, to the

extent that Plaintiffs raise claims involving the storage of the vehicle, including storage charges,

their claims are preempted by § 14501(c)(1).

Second, Plaintiffs' Amended Complaint cites only one Tennessee statute applicable to

Defendant that could be construed as "regarding notice as to storage fees and sale." That statute

is T.C.A. § 66-19-103, which provides in relevant part as follows:

> **66-19-103.  Garagekeeper's or towing firm's lien. –**
> (a)(1)(A)Garagekeepers or establishments substantially in the
> business of towing vehicles for hire, pursuant to the provisions of
> title 55, chapter 16, hereinafter referred to as "towing firms" shall
> be entitled to a lien upon all vehicles, which lawfully come into
> their possession and are retained in their possession until all
> reasonable charges are due and paid.  A garage keeper may, after
> sixty (60) days, enforce this lien in the manner prescribed for the
> enforcement of artisans' liens under §§ 66-14-102 – 66-14-106,
> except the garage keeper shall only be required to advertise the
> sale one (1) time in a newspaper published in the place where the
> sale is to be held.
>
> . . .
>
> (4) A garagekeeper or towing firm may not collect any storage or
> related fees for any period of time in which the garagekeeper or
> towing firm was in violation of subdivision (a)(1) with respect to a
> motor vehicle or associated equipment.

21

Relying on subsection (4), Plaintiffs argue that Defendant violated subdivision (1) of the statute by violating T.C.A. § 66-14-103, which essentially requires notice of the sale to include "a specified time and place" for the sale. Plaintiffs also argue that Defendant violated T.C.A. § 66-14-104, because the advertisement did not state the name of the owner of the truck and because Defendant held the sale less than fifteen (15) says from the time of the first publication of the notice of sale.

Plaintiffs would have no direct cause of action against Defendant for violating T.C.A. § 66-14-103 or T.C.A. § 66-14-104. These statutes are part of a Code chapter entitled "Artisans' lien." As provided in T.C.A. § 66-14-101, these statutes pertain to "[s]ilversmiths, lock and gunsmiths, blacksmiths, watchmakers and repairers, and artisans generally, who do work for the public." T.C.A. § 66-14-101(a). Additionally, T.C.A. § 66-14-101(b) provides:

> "Artisans" are further defined as including persons who make, clean, mend, repair, alter or otherwise perform work on shoes or boots, as well as persons with whom are left goods or products to be repaired, developed, processed or improved.

Defendant does not fall within any of these definitions. As Plaintiffs apparently recognize, these statutes can be applicable to Defendant only through T.C.A. § 66-19-103(1) and -103(4). T.C.A. § 66-19-103(1) and -103(4), however, relate to storage fees charged by Defendant. T.C.A. § 66-19-103(1) provides for a lien upon vehicles that lawfully come into the possession of towing firms which are retained in their possession "until all reasonable charges are due and paid." T.C.A. § 66-19-103(4) prohibits a towing firm from collecting "any storage or related fees" under certain circumstances.

In short, T.C.A. § 66-19-103(1) and -103(4) relate to storage prices charged by Defendant. Any claims Plaintiffs may have based upon these statutes, under the theory that

22

Defendant converted the truck by acting in a manner contrary to Plaintiff's rights, are preempted by § 14501(c)(1).

Plaintiffs' Motion cites a number of other Tennessee statutes. Plaintiffs argue that T.C.A. § 55-16-112 required Defendant to obtain expressed written authorization not only for the towing of the truck, but also for the storage of the truck. Plaintiffs argue that T.C.A. § 55-23-103 and -104 disallow storage fees in excess of sixty (60) days unless the owner consents or receives notice. Once again, the statutes plainly relate to Defendant's prices and services, and Plaintiffs' claims based upon these arguments are preempted.

In view of the foregoing analysis, the Court concludes that Plaintiffs' claims for conversion, including any claims regarding alleged unauthorized storage charges or Defendant's alleged violations of Tennessee statutes regarding notice as to storage fees and sales, are preempted by federal law. There is no genuine issue as to any material fact, and Defendant is entitled to a judgment as a matter of law concerning these claims.

As will be discussed in section E below, the question whether Defendant's conduct in continuing to negotiate with Plaintiffs for the release of the vehicle after it had been sold forms the basis of Plaintiffs' TCPA claims. Plaintiffs have a stronger argument that these claims do not relate to Defendant's "price, route, or service . . . with respect to the transportation of property." The Court need not reach the issue of preemption with regard to these claims, because, as will be discussed in section E, Plaintiffs cannot recover on their TCPA claims.

## D. Trover

Count IV of Plaintiffs' Amended Complaint is headed "Trover." That Count essentially avers that Defendant exerted dominion over property belonging to Plaintiffs, in denial of, and

inconsistent with, the rights of Plaintiffs. That Count further states, "The wrongful appropriation

and other wrongful contact by the Defendant, TOW PRO, constitute acts of trover in derogation

of [Plaintiffs'] property rights." Docket No. 17, ¶ 43.

Defendant does not separately discuss Plaintiffs' claims for trover in its Motion for

Summary Judgment. Instead, Defendant discusses trover in connection with its arguments

concerning conversion. Similarly, in their Response, Plaintiffs do not discuss trover separately,

but merely make one reference to "conversion and trover." Docket No. 90, p. 20.

**Black's Law Dictionary** (7th Ed. 1999) defines trover as follows:

> A common-law action for the recovery of damages for the
> conversion of personal property, the damages generally being
> measured by the value of the property.

The Tennessee Supreme Court discussed actions for trover in *Jack Strader Tire Co. v.*

*Manufacturers Acceptance Corp.*, 429 S.W.2d 428 (Tenn. 1968). The *Strader* Court stated in

pertinent part:

> Strader sued in trover for conversion. It was thus entitled to a
> monetary judgment if successful. The general rule in this regard is
> correctly stated in Caruthers History of a Lawsuit, sec. 134 (8th Ed.
> 1963), as follows:
>
> > "It has been seen that where the wrong consists of
> > unlawfully withholding the possession of personal
> > property, the action of a replevin or detinue may be
> > brought by the injured party. In such a case the
> > injured party may elect to pursue either of those
> > forms, or he may sue in trover, in which action the
> > plaintiff does not seek to recover the property at all,
> > but only damages for the conversion of it. The
> > value of the property withheld by the defendant at
> > the time of the conversion is the measure of
> > damages in the action, as a general rule."

429 S.W.2d at 329-30.

Thus, to succeed in a trover action, a Plaintiff must establish conversion. Because Plaintiffs in the case at bar cannot establish conversion, they cannot establish a cause of action for trover.

### E. TCPA Claims

In Count V of their Amended Complaint, Plaintiffs claim that Defendant violated T.C.A. 47-18-104. Subsection (a) of that statute generally prohibits "[u]nfair or deceptive actual practices affecting the conduct of any trade or commerce . . . ." Subsection(b) of the statute lists 32 separate acts that are declared to be unlawful and in violation of "this part," as well as a general prohibition against "[e]ngaging in any other act or practice which is deceptive to the consumer or to any other person."

Plaintiffs do not discuss the specific provision of § 47-18-104 that Defendant allegedly violated. In their Amended Complaint, Plaintiffs claim that the statute was violated by "Defendant's continued possession of the Truck and its threatened sale of the Vehicle unless [Plaintiffs] pay [*sic*] to it the outrageous sum of $20,000.00 . . . ." Docket No. 20, ¶ 47. Plaintiffs further aver that, because Defendant did not have the right to maintain possession of and sell the vehicle, its representations to Plaintiffs that it could also violated the statute. *Id.*, ¶ 48.

Additionally, in their opposition to the instant Motion, Plaintiffs argue that Defendant violated the statute by continuing "to negotiate the return of the vehicle by demanding payment of almost $20,000 long after [Defendant] had secretly sold the vehicle and had no lien to enforce or vehicle to return." Docket No. 90, p. 19.

25

As discussed above, there is no support in the record, in a form required by Fed. R. Civ. P. 56(c), for Plaintiffs' allegation that Defendant demanded $20,000 before it would return the truck to Plaintiffs. Thus, Plaintiffs' TCPA claims, to the extent that they rely upon this alleged fact, must fail. Plaintiffs' only claims under the TCPA, therefore, are: (1) that Defendant violated that Act because it did not have the right to maintain possession of and sell the vehicle, even though it represented to Plaintiffs that it did, and (2) that Defendant continued to negotiate the return of the vehicle after it had "secretly sold the vehicle and had no lien to enforce or vehicle to return." Docket No. 90, p. 19.

As quoted above, T.C.A. § 47-18-104(a) does not prohibit "unfair or deceptive acts or practices" generally. The statute only prohibits unfair or deceptive acts or practices "affecting the conduct of any trade or commerce . . . ." T.C.A. § 47-18-103(11) defines the terms "trade" and "commerce" as follows:

> "Trade," "commerce," or "consumer transaction" means the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated.

In the case at bar, Defendant's actions in representing to Plaintiffs that it had the right to maintain possession of and sell the vehicle, and in continuing to negotiate with Plaintiffs for the return of the truck, after the truck had already been sold at auction, do not involve "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property . . . ." Instead, these representations were made to Plaintiffs (or their counsel) in the context of negotiations concerning the return of the vehicle to its owners (Plaintiffs) upon payment of

Defendant's towing and storage fees, and upon Defendant's release of its lien on the vehicle. Thus, Plaintiffs have no cause of action under T.C.A. § 47-18-104.

Moreover, T.C.A. § 47-18-104 declares unfair or deceptive acts or practices affecting the conduct of any trade or commerce to be "unlawful acts or practices" only to be Class B misdemeanors. A private right of action for damages for violation of T.C.A § 47-18-104 is set forth in T.C.A. § 47-18-109(a)(1) which provides:

> **Private right of action – damages – Notice to division –** (a)(1)
> Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person or an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages.

Even if the acts complained of were unfair or deceptive, Plaintiffs have not shown that they suffered any damage as a result of those acts, and it is difficult to see how they did. Defendant and Plaintiffs never reached an agreement for the payment of fees and the return of the truck. Therefore, the fact that Defendant no longer owned the truck is simply irrelevant.[13]

Additionally, Plaintiffs have not alleged or shown any damages arising from the fact that Defendant represented to Plaintiffs that it had the right to maintain possession of and sell the truck, even though it did not. Once again, it is difficult to understand how Plaintiffs suffered ascertainable damages as a result of this demand.

---

[13] Moreover, as discussed above, Defendant's President was the owner of the truck at relevant time periods. If Plaintiffs and Defendant had reached agreement upon an appropriate payment of fees, it is difficult to believe that Defendant could not have obtained the truck from its President.

## IV. Conclusion

For the foregoing reasons, the Court concludes that there is no dispute as to any material fact and that Defendant is entitled to a judgment as a matter of law concerning all of Plaintiffs' claims.

An appropriate Order will be entered.

_E. Clifton Knowles_
E. Clifton Knowles
United States Magistrate Judge